ANDERSON, Collector of Internal Revenue, v. McNEIR. *

(Circuit Court of Appeals, Second Circuit. January 10, 1927.)

No. 139.

1. Commerce ⬅⟿77—Internal revenue ⬅⟿2 (11)—Gift tax held "excise tax," and not unconstitutional (Revenue Act 1924, §§ 319–324 [Comp. St. §§ 6336⅘s–6336⅘x]; Const. art. 1, § 2, subd. 3; § 8, subd. 1; § 9, subds. 4, 5).

Tax imposed by Revenue Act 1924, §§ 319–324 (Comp. St. §§ 6336⅘s–6336⅘x), on gifts inter vivos, *held* to constitute an "excise tax," and not direct tax, so as to make it invalid, under Const. art. 1, § 2, subd. 3, section 8, subd. 1, and section 9, subds. 4, 5.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Excise.]

2. Internal revenue ⬅⟿2(11)—Gift tax held not unconstitutional because of retroactive feature, requiring payment of tax on gifts made during calendar year of enactment (Revenue Act 1924, §§ 319–324 [Comp. St. §§ 6336⅘s–6336⅘x]).

Revenue Act 1924, §§ 319–324 (Comp. St. §§ 6336⅘s–6336⅘x), imposing tax on gifts inter vivos, *held* not unconstitutional because of retroactive feature requiring payment of taxes on any gift made during calendar year of 1924, since Congress has power to enact retroactive tax legislation.

*Certiorari granted 47 S. Ct. 477, 71 L. Ed. —.

**3. Constitutional law ⫅⟹283—Gift tax held not unconstitutional, as unreasonable and capricious classification (Revenue Act 1924, §§ 319–324 [Comp. St. §§ 6336⅘s–6336⅘x]; Const. Amend. 5).**

Revenue Act 1924, §§ 319–324 (Comp. St. §§ 6336⅘s–6336⅘x), imposing tax on gift inter vivos *held* not void, under Const. Amend. 5, because of unreasonable and capricious classification, since tax operates uniformly throughout the United States.

**4. Constitutional law ⫅⟹283—Due process clause does not limit taxing power of federal government (Const. Amend. 5).**

Due process clause of Const. Amend. 5 does not constitute a limitation on taxing power of federal government.

In Error to the District Court of the United States for the Southern District of New York.

Action by George McNeir against Charles W. Anderson, as Collector of Internal Revenue for the Third District of New York, to recover taxes assessed against him and paid under the Revenue Act of 1924. Decree for plaintiff (10 F.[2d] 813), and defendant appeals. Reversed.

Emory R. Buckner, U. S. Atty., of New York City (Thomas J. Crawford and Edward Feldman, Asst. U. S. Attys., both of New York City, and Charles T. Hendler, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., of counsel), for plaintiff in error.

Geller, Rolston & Blanc, of New York City (C. Alexander Capron and Russell L. Bradford, both of New York City, of counsel), for defendant in error.

Before MANTON and HAND, Circuit Judges, and CAMPBELL, District Judge.

MANTON, Circuit Judge. During the calendar year of 1924, and prior to the passage of the Revenue Act of that year, the defendant in error made an irrevocable deed of trust to the Farmers' Loan & Trust Company, giving a large gift of securities for the benefit of his wife, children, and grandchildren. The income from the corpus of this trust was to be paid to his wife and two children during the term of their lives. Trusts were created for grandchildren of the donor in the event that the wife and the children of the donor should predecease him without leaving issue. A further provision of the trust was that, in the event of the wife and children so dying and the donor being not then living, one half of the principal should go to Georgetown University and the other half pass under the intestate laws of the state of New York. An additional

gift of $4,300 was made by the donor after the passage of the act.

Because of the requirements of sections 319–324 of the Revenue Act of 1924 (Comp. St. §§ 6336⅘s–6336⅘x), in January, 1925, the defendant in error filed a gift tax return, reporting these gifts made by him during the year 1924. The plaintiff in error assessed a tax, and collected it, under protest, pursuant to this act. In this action, the defendant in error has succeeded in its recovery.

The act (43 Stat. 253, 313, § 319) requires that, for the calendar year of 1924 and each calendar year thereafter, a tax (referred to in a schedule unnecessary to mention here) is imposed upon the transfer by a resident by gift during such calendar year of any property wherever situate, whether made directly or indirectly, and upon the transfer by a nonresident by gift during such calendar year of any property situated within the United States. Section 320 makes provision for a tax in the event that the gift be made in property, so that the tax be paid on the fair market value. Section 321 provides for deductions, in the case of a resident, an exemption of $50,000; also gifts to charity, all gifts the aggregate amount of which to any one person do not exceed $500, are exempt. A further provision of exemption is made for property transferred by gift, which has been received by the donor within five years prior to the time of his making such gift, either from another person by gift, or by a decedent by gift, devise, or inheritance. Section 322 provides that where a tax is imposed under section 319 upon any gift, and thereafter, upon the death of the donor, the amount thereof is required by any provision of part I of this title to be included in the gross estate of the decedent, then there shall be credited against, and applied in reduction of the estate tax, an amount equal to the tax paid with respect to such gift. Section 323 provides that any person who, within the calendar year of 1924 or any calendar year thereafter, makes any gift or gifts in excess of the deductions allowed by section 321, shall, on or before the 15th day of March, file with the collector a return under oath, listing and setting forth therein all gifts and contributions made by him during such calendar year. Section 324 provides how the tax shall be assessed and collected.

This gift tax is attacked by the defendant in error as repugnant to the Constitution, and he invokes article 1, § 2, cl. 3, which requires that direct taxes shall be ap-

portioned among the several states according to their respective numbers; and article 1, § 9, cl. 4, which provides that no capitation or other direct tax shall be laid, unless in proportion to the census or enumeration hereinbefore directed to be taken; and article 1, § 8, cl. 1, that Congress shall have power to lay and collect taxes, duties, imposts and excises, but all duties, imposts and excises shall be uniform throughout the United States; and article 1, § 9, cl. 5, that no tax or duty shall be laid on articles exported from any state.

[1] The questions presented by this writ are (1) whether the gift tax provided for by this enactment is a direct tax, as contended by the defendant in error, or an excise or indirect tax, as claimed by the government; (2) is it unconstitutional, in so far as it imposes a tax upon transfers by gift made in the calendar year 1924, but consummated before June 2, 1924, when the act became effective? It is also claimed that, if the tax be an excise and not a direct tax, it is repugnant to the Fifth Amendment of the Constitution, as unreasonable and of capricious classification.

The power of taxation by the national government was delegated to Congress, but within the restraints of the Constitution. The power to lay and collect taxes, duties, imposts, and excises is exhaustive, and embraces every conceivable power of taxation. Brushaber v. Union Pacific R. R. Co., 240 U. S. 1, 36 S. Ct. 236, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713. It embraces all the attributes which appertain to sovereignty in the fullest sense. United States v. Bennett, 232 U. S. 299, 34 S. Ct. 437, 58 L. Ed. 612. As said in Nicol v. Ames, 173 U. S. 509, 514, 19 S. Ct. 522, 525 (43 L. Ed. 786):

"The presumption, as has frequently been said, is in favor of the validity of the act, and it is only when the question is free from any reasonable doubt that the court should hold an act of the lawmaking power of the nation to be in violation of that fundamental instrument upon which all the powers of the government rest. This is particularly true of a revenue act of Congress. The provisions of such an act should not be lightly or unadvisedly set aside, although if they be plainly antagonistic to the Constitution it is the duty of the court to so declare."

There is not to be found in the cases a clear definition of precisely what is meant by a direct tax, or, indeed, an excise tax. It has become a rule of application to each particular tax. The nature of the tax is to be determined from the standpoint of the Constitution. It may not be answered by the theories of political economists. Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, 15 S. Ct. 673, 39 L. Ed. 759; Knowlton v. Moore, 178 U. S. 41, 20 S. Ct. 747, 44 L. Ed. 969. Prior to the Pollock Case, it was thought that the direct tax referred to in the Constitution comprised only a capitation or poll tax and a tax on land. The Supreme Court in Hylton v. United States (1796) 3 Dall. 171, 1 L. Ed. 556, overruled a challenge to a tax, as unapportioned, imposed on carriages for the convenience of persons who shall keep them for their own use or to be let out for hire or conveying of passengers. This was held to be an excise tax. In Pacific Insurance Co. v. Soule, 7 Wall. 433, 19 L. Ed. 95, a tax imposed upon premium receipts, dividends, and income of insurance companies was upheld as a proper exercise of constitutional power to levy excise taxes. A tax levied upon the amount of notes of state banks or banking associations, paid out by any national or state banking association, was also held to be an excise tax. Veazie Bank v. Fenno, 8 Wall. 533, 19 L. Ed. 482. The succession tax upon the devolution of title to real estate was held to be an indirect tax and constitutional. Scholey v. Rew, 23 Wall. 331, 23 L. Ed. 99.

In Pollock v. Farmers' Loan & Trust Co., supra, an income tax was held to be unconstitutional, and was said to be the legal equivalent of a direct levy upon the property from which the income was derived, and therefore required apportionment. Later, in 1898, the Supreme Court held a tax levy upon the sale of commodities on boards of trade and exchanges was a valid excise. Nicol v. Ames, supra. A tax on gifts by will was held to be an excise, and not a direct tax. Knowlton v. Moore, 178 U. S. 41, 20 S. Ct. 747, 44 L. Ed. 969. So, also, the stamp tax levied on calls or agreements to sell stock. Treat v. White, 181 U. S. 264, 21 S. Ct. 611, 45 L. Ed. 853. And the tax on manufactured tobacco intended for sale was held to be an excise tax in Patton v. Brady, 184 U. S. 608, 22 S. Ct. 493, 46 L. Ed. 713, as was a stamp tax on a memorandum or contract of sale of stocks in Thomas v. United States, 192 U. S. 363, 24 S. Ct. 305, 48 L. Ed. 481. A corporation excise tax was held valid in Flint v. Stone Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312. This tax was said not to be upon the corporate franchises, irrespective of their use, or upon the property of the corporation, but upon

the doing of the corporate business and with respect to the carrying on thereafter.

In Billings v. United States, 232 U. S. 261, 34 S. Ct. 421, 58 L Ed. 596, the tax was imposed under the Tariff Act upon the use of foreign-built yachts, not used or intended to be used for trade. It was sustained as an excise tax.' In that case, the court pointed out that it was to be observed that the provision dealt with ownership, and distinguished between ownership and use, since it based the tax, not upon the former, but upon the use, and stated that it followed that it was not the ownership, but the election, during the taxing period, of the owner to take advantage of one of the elements which were involved in ownership; that is, the right to use was subject under the statute to the excise duty. And the court said:

"In this view the fact of use, not its extent or its frequency, becomes the test, as distinguished from mere ownership, for that in the statutory sense could exist without use having taken place. * * * Use in the statutory sense, although it arises from ownership, is active (objective); that is, it is the outward and distinct exercise of a right which ownership confers, but which would not necessarily be exerted by the mere fact of ownership."

The general estate tax enacted in 1916 (Revenue Act) was held constitutional as an indirect tax in New York Trust Co. v. Eisner, 256 U. S. 345, 41 S. Ct. 506, 65 L. Ed. 963, 16 A. L. R. 660, where it was attacked as a direct tax and said to be void·for want of apportionment. The argument was held unsound, and it was said to be a duty or excise, because of the particular occasion which gave rise to its levy.

Below, the learned District Judge thought the tax imposed ·was a direct tax, for the reason that it was imposed by reason of ownership of the property. The tax is novel in this country, and perhaps has no historical background; but the same may be said of many of the instances of taxation referred to here. This gift tax is not imposed because of general ownership of the property, but because of the happening of an event. The transfer of the property by gift gives rise to its levy. The burden of taxation is borne by the donor, and not by the donee. The tax does not affect any vested right. When the tax is paid by the donor, the donee is divested of no part of the gift, and suffers no diminution thereof. All excises upon any use of property affect some inherent incidents of the right of property. In the law-

ful excise taxes referred to in the cases cited, they are levied upon the owner in the exercise of some interest each had in the property, which might well be termed a right of property. But the cases are clear that, where it is impossible to use property at all without incurring the tax, this is a direct tax upon property and unconstitutional. Pollock v. Farmers' Loan & Trust Co., supra; Dawson v. Kentucky Distilleries, 255 U. S. 288, 41 S. Ct. 272, 65 L. Ed. 638.

It cannot be successfully contended that the right to give away property exhausts those interests which together constitute the rights of property, so as to amount to the taking of the property. The succession tax was sustained largely because of the historical background; it was a part of what was understood as excises. This gift tax does not incumber all the interests one has in property, any more than does the tax imposed upon the right of succession. Congress has no power to regulate succession to property on death but this did not avoid the legacy tax in Knowlton v. Moore, supra, or the federal estate tax in New York Trust Co. v. Eisner, supra. The court in Knowlton v. Moore, supra, said:

"The thing forming the universal subject of taxation upon which inheritance and legacy taxes rest is the transmission or receipt, and not the right existing to regulate. * * * "

The right to dispose of property inter vivos is no more a natural right than is the right to dispose of one's property by sale. The distinction is illustrated in Dawson v. Kentucky Distilleries, supra, where a Kentucky statute imposed a tax upon persons engaged in the business of owning and storing whisky in bonded warehouses. The court held the tax to be one upon property levied solely by reason of ownership, and said:

" 'The whole value of the whisky depends upon the owner's right to get it from the place where the law has compelled him to put it, and to tax the right is to tax the value.' To levy a tax by reason of ownership of property is to tax the property. * * * It cannot be made an occupation or license tax by calling it so."

The excise imposed here is like the act of using property (Billings v. United States, supra), or selling property (Thomas v. United States, 192 U. S. 363, 24 S. Ct. 305, 48 L. Ed. 481; Bowman v. Continental Oil Co., 256 U. S. 642, 41 S. Ct. 606, 65 L. Ed. 1139), and the single use of property—the gift of it, which is a use the owner may make

—may furnish the occasion for laying a valid excise. There are so many other uses which the owner of property may take advantage of that it can hardly be said that a tax imposed for the act of making a gift of it makes it impossible to use it at all without incurring the tax.

[2-4] Nor is the act unconstitutional because it is retroactive. By the terms of the statute, the taxpayer must pay the tax for any gift made during the calendar year of 1924, which begins January 1st, and in this instance involves a gift made prior to the effective date of the law. Billings v. United States, supra. Statutes are presumed to operate prospectively; where the intention is clearly expressed, the statute may operate retrospectively. Congress has the power to enact retroactive tax legislation. Brushaber v. Union Pacific R. R. Co., 240 U. S. 1, 36 S. Ct. 236, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713; Billings v. United States, 232 U. S. 261, 34 S. Ct. 421, 58 L. Ed. 596; Stockdale v. Insurance Co., 20 Wall. 323, 22 L. Ed. 348; Flint v. Stone Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312. In view of the clear language of the statute and its positive direction, there can be no doubt that a gift made any time after January 1, 1924, is taxable under the statute. A further objection to this tax is that it is void under the Fifth Amendment of the Constitution, because the classification is unreasonable and capricious, even assuming it to be an excise tax. The tax operates uniformly throughout the United States. The authorities are in full accord in announcing that the due process clause of the Fifth Amendment does not constitute a limitation upon the taxing power of the federal government. Brushaber v. Union Pacific, 240 U. S. 1, 36 S. Ct. 236, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713; Billings v. United States, 232 U. S. 261, 34 S. Ct. 421, 58 L. Ed. 596; McCray v. United States, 195 U. S. 27, 24 S. Ct. 769, 49 L. Ed. 78, 1 Ann. Cas. 561. This rule obtains unless the taxing power is so exercised as to imply the conclusion that it was not the exertion of taxation, but a confiscation of property. Barclay v. Edwards, 267 U. S. 442, 45 S. Ct. 135, 348, 69 L. Ed. 703; Lewellyn v. Frick, 268 U. S. 238, 45 S. Ct. 487, 69 L. Ed. 934. This tax is a revenue raising measure, and, while it may be aimed at reducing the possibility of avoidance of income and state taxation by persons possessing large fortunes, Congress did not overstep its constitutional limitation in this enactment and taxation.

Judgment reversed, with costs.

HAND, Circuit Judge (concurring). In view of the fact that the question at bar is already before the Supreme Court on a certificate from the Sixth Circuit, I should have preferred to certify this case as well. However, as my brothers think otherwise, I have considered it on its merits.

The best argument against the tax seems to me to be that stated in the opinion of the learned District Judge, and it is this: Succession taxes must rest upon a historical basis; inherently they are taxes on property, because they so far invade the interests which the law collectively protects as property as to leave too little unincumbered by the tax. A gift tax has no historical justification, because it was unknown in 1789.

Even so, and I do not mean that the reasoning is inexorable, it does not seem to me that we need so straitly circumscribe the powers of Congress to what had been done in the eighteenth century. It is unlikely, had the practice then arisen to avoid estate taxes, either by settlements, dependent upon the death of the settler, or by outright gifts, that anybody would have felt it more than a step in the same path to include them with testamentary dispositions, properly speaking.

Considering the amendments of 1916 (Comp. St. § 6336a et seq.) and 1918 (Comp. St. § 6336⅛a et seq.), which covered settlements with remainders on the settler's death, and this amendment of 1924, which covers outright gifts of over $50,000, we must assume, I think, that Congress supposed these to be in pari materia and progressively in execution of the main design. This is not to use the power of taxation for an ulterior purpose, as in the Child Labor Cases, 259 U. S. 20, 42 S. Ct. 449, 66 L. Ed. 817, and the like. The statute may be read as ancillary to collecting sources of revenue made available under Knowlton v. Moore, 178 U. S. 41, 20 S. Ct. 747, 44 L. Ed. 969, and New York Trust Co. v. Eisner, 256 U. S. 345, 41 S. Ct. 506, 65 L. Ed. 963, 16 A. L. R. 660. New occasions call out new means, and, if the purpose be lawful, it does not seem to me an insuperable difficulty that it is realized by strange instruments. Whatever was accepted procedure when the Constitution was enacted is constitutional. Murray v. Hoboken Land Co., 18 How. 272, 15 L. Ed. 372. But the converse is not true.