**MORRISON–KNUDSEN COMPANY, Inc.**

v.

**The UNITED STATES.**

No. 3–69.

United States Court of Claims.

June 12, 1970.

John A. McWhorter, Washington, D. C., attorney of record, for plaintiff. Paul E. McNulty and King & King, Washington, D. C., of counsel.

James A. Pemberton, Jr., Washington, D. C., with whom was Asst. Atty. Gen. William D. Ruckelshaus, for defendant. Peter J. P. Brickfield, of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

DAVIS, Judge.

The Social Security Amendments of 1965, Public Law 89–97, 79 Stat. 286 (enacted July 30, 1965), provided that, as of January 1, 1966, there would be a rise in the rates of social security taxes, as well as in the base for the rates. That increase is relevant to this case because plaintiff, Morrison-Knudsen Company, Inc., claims that under its construction contract with the Government it is entitled to an upward adjustment in price on account of this statutory addition to social security taxes. The fixed-price contract, entered into the summer of 1965 after formal advertising, was for certain work at the National Aeronautics and Space Administration Merritt Island Launch Area. One of the agreement's articles (Clause 26)—a standard provision, headed "Federal, State and Local Taxes[1]—declares: "with respect to any Federal excise tax or duty on the transactions or property covered by this contract, if a statute * * * takes effect after the contract date, and—

(1) results in the Contractor being required to pay or bear the burden of any such Federal excise tax or duty or increase in the rate thereof which would not otherwise have been payable on such transactions or property, the

---

[1]. This clause is set out in ASPR 11–401.1, 32 CFR § 11.401–1 (1961 revision). A later revision (not different for present purposes) was made as of January 1, 1965.

contract price shall be increased by the amount of such tax or duty or rate increase, *provided* the Contractor warrants in writing that no amount for such newly imposed Federal excise tax or duty or rate increase was included in the contract price as a contingency reserve or otherwise; * * *[2]

Acting under this clause, plaintiff gave notice to the defendant at the end of May 1966, that it had incurred and would continue to incur additional costs because of the increase on January 1, 1966, in social security taxes levied by the Social Security Amendments of 1965, and that it was therefore eligible for an upward adjustment in price. The letter warranted that no amount for such a tax increase had been included in the contract price.

This claim was denied by the contracting officer on the legal ground that an increase in social security taxes is not covered by the contract provision. An appeal to the Corps of Engineers Board of Contract Appeals was dismissed on the Government's motion. In view of this action, defendant expressly agrees, for this particular case, that the contractor can properly proceed in court without regard to the contract disputes procedure. Each party asks for summary judgment.

For an increase in contract price to be allowable under Clause 26, *supra,* on account of an upward revision in federal tax rates, the plaintiff must show that (1) an excise tax is involved; (2) this excise is "on the transactions or property covered by this contract"; (3) the

2. The full text of the provision (Clause 26) is as follows:

"26. FEDERAL, STATE, AND LOCAL TAXES (Aug. 1961)

"(a) Except as may be otherwise provided in this contract, the contract price includes all applicable Federal, State, and local taxes and duties.

"(b) Nevertheless, with respect to any Federal excise tax or duty on the transactions or property covered by this contract, if a statute, court decision, written ruling, or regulation takes effect after the contract date and—

"(1) results in the Contractor being required to pay or bear the burden of any such Federal excise tax or duty or increase in the rate thereof which would not otherwise have been payable on such transactions or property, the contract price shall be increased by the amount of such tax or duty or rate increase, *provided* the Contractor warrants in writing that no amount for such newly imposed Federal excise tax or duty or rate increase was included in the contract price as a contingency reserve or otherwise; or

"(2) results in the Contractor not being required to pay or bear the burden of, or in his obtaining a refund or drawback of, any such Federal excise tax or duty which would otherwise have been payable on such transactions or property or which was the basis of an increase in the contract price, the contract price shall be decreased by the amount of the relief, refund, or drawback, or that amount shall be paid to the Government, as directed by the Contracting Officer.

The contract price shall be similarly decreased if the Contractor, through his fault or negligence or his failure to follow instructions of the Contracting Officer, is required to pay or bear the burden of, or does not obtain a refund or drawback of, any such Federal excise tax or duty.

"(c) No adjustment of less than $100 shall be made in the contract price pursuant to paragraph (b) above.

"(d) As used in paragraph (b) above, the term "contract date" means the date set for bid opening, or if this is a negotiated contract, the contract date. As to additional supplies or services procured by modification to this contract, the term "contract date" means the date of such modification.

"(e) Unless there does not exist any reasonable basis to sustain an exemption, the Government upon the request of the Contractor shall, without further liability, furnish evidence appropriate to establish exemption from any Federal, State, or local tax; *provided* that, evidence appropriate to establish exemption from any Federal excise tax or duty which may give rise to either an increase or decrease in the contract price will be furnished only at the discretion of the Government.

"(f) The Contractor shall promptly notify the Contracting Officer of matters which will result in either an increase or decrease in the contract price, and shall take action with respect thereto as directed by the Contracting Officer. (ASPR 11–401.1(c))"

tax increase took effect after the "contract date"; (4) the contractor was required to pay or bear the burden of the increase, and (5) no amount "for such newly imposed Federal excise tax * * * increase was included in the contract price as a contingency reserve or otherwise."

Four of these five factors are not seriously in question at this stage of the litigation. It is indisputable that the increase imposed by the Social Security Amendments of 1965 on employers was a federal excise tax. The Act specifically so characterizes it (§ 321(c), 79 Stat. 396), and the pertinent holdings are that social security taxes levied on employers are excises. See Abney v. Campbell, 206 F.2d 836 (C.A.5, 1953); Blake Constr. Co., GSBCA No. 1289, 65–1 BCA ¶4557 (1964). There is also no doubt that the tax increase took effect after the "contract date." That term is defined by the contract clause (see note 2, *supra*) as "the date set for bid opening." In this case, that day was July 27, 1965. The Act became law on July 30th, and the increase involved here did not take effect until January 1, 1966. As for plaintiff's carrying the burden of the increase, defendant does not contest that fact. The last factor, the warranty of non-inclusion in the contract price of any amount for the tax increase, was covered by Morrison-Knudsen's original letter of demand, and is repeated in an affidavit filed on the current motions; by these documents, plaintiff has made at least a prima facie case on this point.[3]

■ The only real question before us is whether the 1966 social security tax increase was "on the transactions or property covered by this contract." The area of dispute is reduced even further since plaintiff agrees that the tax is not on "property." The focus falls, there-fore, on the meaning of "transactions * * * covered by this contract," as related to federal social security taxation. Much exegetical energy can be expended on this problem, especially when fueled by a trace of metaphysics. The Government insists that, while the word "transaction" necessarily connotes action or movement, the social security tax is placed solely on a static state of being, the relationship of employer and employee. Plaintiff's response is that the furnishing, hiring, and employment of labor is an integral part of the performance required by this construction contract,[4] and, accordingly, that employer-employee relationships necessarily constitute "transactions * * * covered by this contract." Though such purely analytic guides are of some aid, we think that the decisive help comes from three other inter-related sources: (i) the general purpose of the contract clause; (ii) the history of these clauses in federal procurement; and (iii) the canon relating to the Government's responsibility for its own contractual ambiguities. Each of these signs points in the same direction—toward upholding the contractor's viewpoint.

■ For federal excise taxes, the self-evident purpose of the contract clause—its general goal—is to make sure that bidders and contractors do not load their bids and prices with reserves or contingencies for the later imposition of, or increases in, such taxes. Bidders and contractors are to be encouraged to depend upon a price adjustment if they subsequently find themselves forced to pay higher taxes, rather than to seek to protect themselves in advance by raising their prices to cover the mere possibility of a tax increase. This general purpose seems to us to call for a liberal inter-

---

3. Without indicating any reason to doubt plaintiff's affidavit, defendant seeks to reserve the right to demand additional proof of this fact at a later stage. We leave to the proceedings under Rule 131 (c) the question of whether such a further showing should be required.

4. Plaintiff points out that the contract work consisted of "furnishing all plant, *labor*, materials and equipment * * * (emphasis added), and that the contract incorporated several provisions dealing with employment, compensation, conditions of work, labor standards, etc.

pretation of the coverage of the clause, once it is clear, as here, that a federal excise tax is involved. It would deter, rather than advance, the over-all aim of guarding against the unnecessary inflation of contingency reserves to give a niggardly, technical or too-finely-reasoned interpretation to the words "transactions or property covered by this contract." This is broad, ordinary, language and it should be given a broad, ordinary, and common-sensical reading so that bidders and contractors will not continue to load their prices with contingencies, for fear that some federal excise tax might later be held, by the type of refined linguistic parsing defendant uses here, not to be reached by the adjustment provision. Approached on this common-sense plane, there is little doubt, in our eyes, that federal social security taxes are "on transactions * * *

covered by this contract," a contract providing for substantial construction and involving a great deal of labor.

The same result is suggested by the history of the standard Defense Department clauses on taxes. An earlier version for formally advertised contracts differed in three pertinent respects: first, it provided for adjustment of state and local, as well as federal, taxes; second, the adjustment provision was not restricted to excise taxes but covered all categories; and, third, "social security taxes" were expressly excluded from the adjustment provision.[5] Some time later, this clause was revised for advertised procurement (as well as for some negotiated contracts) to read essentially as does Clause 26 in Morrison-Knudsen's contract. ASPR 11–40.1, 26 Fed.Reg. 9640 (Oct. 12, 1961), 32 CFR § 11.401–1. This meant that the adjustment provision

---

5. This clause (23 Fed.Reg. 3631, May 27, 1958) provided in relevant part: "FEDERAL, STATE, AND LOCAL TAXES

"(a) As used throughout this clause, the term "tax inclusive date" means the date of negotiated contracts and the date set for the opening of bids for contracts entered into through formal advertising. As to additional supplies or services procured by modification to this contract, the term "tax inclusive date" means the date of such modification.

"(b) Except as may be otherwise provided in this contract, the contract price includes all Federal, State, and local taxes and duties in effect and applicable to this contract on the tax inclusive date, except taxes (other than Federal transportation taxes) from which the Government, the Contractor, or the transactions or property covered by this contract are then exempt. Unless specifically excluded, duties are included in the contract price, and, if freight is included in the contract price, Federal transportation taxes are likewise included.

"(c) (1) If the Contractor is required to pay or bear the burden—

"(i) Of any tax or duty, which either was not to be included in the contract price pursuant to the requirements of paragraph (b), or was specifically excluded from the contract price by a provision of this contract, or

"(ii) Of an increase in rate of any tax or duty, whether or not such tax or duty was excluded from the contract price;

or of any interest or penalty thereon, the contract price shall be correspondingly increased: *Provided*, That the Contractor warrants in writing that no amount of such tax, duty, or rate increase was included in the contract price as a contingency reserve or otherwise: *And provided further*, That liability for such tax, duty, rate increase, interest, or penalty was not incurred through the fault or negligence of the Contractor or its failure to follow instructions of the Contracting Officer.

\* \* \* \* \*

"(4) Nothing in this paragraph (c) shall be applicable to social security taxes; net income taxes; excess profit taxes; capital stock taxes; Federal transportation taxes, except changes in the rate thereof, including repeal, pertaining to shipments from the Contractor to the Government; unemployment compensation taxes; or any State and local taxes, except those levied on or measured by the contract or sales price of the services or completed supplies furnished under this contract, including gross income taxes, gross receipts taxes, sales and use taxes, excise taxes, or franchise or occupation taxes measured by sales or receipts from sales."

\* \* \* \* \*

An alternative phrasing of the clause, to be used for certain negotiated contracts, was the same in the respects pertinent here. 23 Fed.Reg. 3632 (May 27, 1958).

was confined to federal excise taxes and that the specific exclusions (including the exception for social security taxes) were omitted. But the significant fact is that the prior form was substantially retained, including the specific exception for social security taxes, for most negotiated agreements. See ASPR 11–401.2, 32 CFR § 11.401–2. At least since 1959, this older version has even used the same phraseology, "transactions [or property] covered by the contract", in the very same context, as appears in plaintiff's narrower clause limited to federal excises. 24 Fed.Reg. 10640 (Dec. 24, 1959).[6]

This retention of the express exclusion for social security taxes in the one form, at the same time that the exception is deliberately omitted from the second variety (involved here), tends strongly to support the contractor's case. The Government explains that the operative portion of the older formula covered all sorts of taxes, not merely federal excise taxes (as does Clause 26 of plaintiff's contract), and that specific exclusions were therefore essential to carve out special types of levies which were not intended to be included. This may possibly be so, but if, as defendant also argues, a social security tax is clearly not one levied on "transactions * * * covered by this contract"—and accordingly would not be within the clause's ambit even without the exclusion—one wonders why the express exception was thought necessary. At its irreducible minimum, the existence of the two clauses, one with the specific exclusion and the other without, creates serious doubt as to defendant's reading.[7]

██ This leads inevitably to that too-familiar companion of government con-

tracts, the principle of ambiguity. From what we have said, it is plain that, with respect to social security taxes, the contract clause is ambiguous at best, and that the contractor's understanding of it is, at the very least, an entirely reasonable one, consistent with the provision's language, its general purpose, and its history. That reasonable view is therefore entitled to prevail. See e.g., United States v. Seckinger, 397 U.S. 203, 216, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970); Mountain Home Contractors v. United States, 425 F.2d 1260, 192 Ct.Cl. (May 1970); Gorn Corp. v. United States, 424 F.2d 588, 191 Ct.Cl. (April 1970); Sturm v. United States, 421 F.2d 723, 190 Ct.Cl 691. (Feb. 1970).

Defendant poses as counterbalance the placement of the contract provision (Clause 26) in ASPR. Part 11 of 32 C. F.R., entitled "Federal, State, and Local Taxes," has four subdivisions. Subpart A lists certain federal excise taxes (not including social security taxes), subpart B deals with exemptions from federal taxation, subpart C is concerned with state and local taxes, and subpart D contains the contract clauses. The argument is that all this is closely tied together, and that the federal excise taxes referred to in the contract clause (in subpart D) are only those previously listed in subpart A. The prime difficulty with this proposition is that the clause covers "any Federal excise tax * * * on the transactions * * * covered by this contract" (emphasis added), does not refer in any way to the particular taxes listed earlier in the ASPR, and gives no indication whatever that those are the only ones to be included.[8] Cf. Motor Fuel

---

6. The 1958 clause, note 5, *supra*, also used the phrase but in a slightly different context.

7. Defendant argues that, on plaintiff's theory, the absurd conclusion must be reached that all the other taxes formerly made "not applicable" by the old clause (see note 5, *supra*) would be covered by Clause 26—including income taxes, excess profit taxes, and certain

property taxes. The easy answer is, of course, that Clause 26 is strictly limited to federal excise taxes and could not conceivably cover such other imposts.

8. Subpart A itself recognizes that it deals only "with Federal taxes involved in the procurement of *certain* supplies and services. It is for the general information of Government personnel and does not purport to present the full scope of

Carriers, Inc. v. United States, 420 F.2d 701, 707, 190 Ct.Cl. 385, 392 (Jan. 1970). Even if the drafter's unexpressed intention had been to limit the clause to those particular taxes, it would not be unreasonable for a contractor, no matter how experienced in government business, to fail to see the hidden connection. This would be particularly true since the excises listed in subpart A concern property or supplies, and do not deal with "transactions" (except, perhaps for the use tax on highway motor vehicles, see note 9, *infra*). Indeed, on any of its narrowing hypotheses, defendant is hard put to dredge up any substantial coverage for the portion of the contract clause referring to a "Federal excise tax * * * on the transactions * * * covered by this contract." [9] This absence of content, under the Government's view, for the "transactions" part of the clause is another element supporting the reasonableness of the contractor's reading.

United States v. Glenn L. Martin Co., 308 U.S. 62, 60 S.Ct. 32, 84 L.Ed. 82 (1939)—which the defendant urges is close to this case—seems to us quite different. There, the contract required an upward price adjustment for an after-imposed tax "made applicable directly upon production, manufacture, or sale of the supplies called for herein and [which] are paid by the contractor on the articles or supplies herein contracted for * * *." The Supreme Court held that social security taxes did not come within this description because they were not imposed "on" the goods—the "materials", "articles" or "supplies"—to be provided under the contract. That reading accorded both with the literal language and with the common-sense understanding of that clause. Plainly, the very dissimilar language of the Martin agreement is much narrower and more limited than the broader and much more general clause we have here which leads to the opposite result.[10]

The plaintiff is entitled to recover, its motion for summary judgment is granted, and the defendant's cross-motion is denied. Judgment is entered to that effect. The amount of recovery will be determined under Rule 131(c).[11]

---

the applicable provisions of law and implementing regulations as they may be amended from time to time." 32 CFR § 11.100 (emphasis added).

9. The only existing tax to which defendant points is the tax imposed on the use of highway motor vehicles (26 U.S.C. § 4481), and that would be covered, defendant says, only if the contract required the contractor to provide transportation by motor vehicle as an "end item" of the contract. In a construction contract that would hardly at all, if ever, be true.

The Government also refers to the former excise tax on transportation (Int. Rev.Code of 1954, §§ 4271–4273), repealed (effective August 1, 1958) on June 30, 1958 by § 4(a) of Public Law 85–475, 72 Stat. 259, 260. Counsel presents the imaginative but wholly undocumented conjecture that the drafters of the 1958 contract clause (see note 5, *supra*) may have had in mind the possibility of modification of this transporta-

tion tax while the bill dealing with it was going through Congress. As plaintiff points out, there is nothing at all solid to support this guess, and in any event it seems unlikely that drafters who were thinking only of a transportation tax would use the broad and general word "transactions". Moreover, the term "transactions" still continues to be used in the clause even though the transportation tax was repealed in 1958.

10. Our conclusion does disagree with 47 Comp.Gen. 163 (1967); Jacobsen Constr. Co., GSBCA No. 2022, 66–2 BCA ¶ 5874 (1966); and Preston Haglin Co., VACAB No. 623, 67–2 BCA ¶ 6629 (1967)—all of which involve precisely the same question as is presented here.

11. We leave open the amount and measure of recovery since plaintiff assures us that its motion goes only to the issue of the Government's liability, not at all to quantum. Defendant has expressly agreed that the amount of recovery can be determined under Rule 131(c).